# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 11, 2018        Decided April 27, 2018

No. 17-3008

UNITED STATES OF AMERICA,
APPELLEE

v.

HIACHOR KPODI,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cr-00214-1)

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman* and *Nicholas P. Coleman*, Assistant Attorneys General.

Before: HENDERSON and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: In 2014, a jury convicted Hiachor Kpodi of possessing with intent to distribute twenty-eight grams or more of cocaine base and possession of a firearm by a felon. The District Court sentenced him to 151 months of imprisonment. This court vacated Kpodi's initial sentence because the District Court had relied on an erroneous inference based on evidence that had been excluded from trial. *United States v. Kpodi* ("*Kpodi I*"), 824 F.3d 122 (D.C. Cir. 2016). The case was remanded for resentencing.

At one point during Kpodi's resentencing hearing, the District Court and prosecution appeared to agree that, contrary to the judgment of this court, the District Court had not erred during the first sentencing. The trial judge then went on to reevaluate the applicable sentencing factors and again imposed a sentence of 151 months.

Kpodi now appeals from his resentencing. He argues that the hearing before the District Court was tainted because, during the course of resentencing, the trial judge expressed some doubt about the judgment in *Kpodi I* and Government counsel suggested that the District Court should disregard this court's decision. In light of this record, Kpodi argues that the District Court's resentencing decision is no better than the sentencing decision that was reversed by *Kpodi I*. In Kpodi's view, the judgment of the District Court ignores the mandate of *Kpodi I* and violates the law of the case and, therefore, must be reversed. We disagree. Although Government counsel showed little regard for our decision in *Kpodi I*, the record indicates that the trial judge fully complied with this court's judgment without being influenced by any improper considerations. And the District Court's resentencing decision was eminently reasonable. We therefore affirm.

## I.    BACKGROUND

### A.  Initial Trial and Sentencing

Hiachor Kpodi was arrested on May 9, 2013. The specific circumstances of his arrest and jury trial are detailed in *Kpodi I* and need not be repeated here. For our purposes, it is sufficient to note that Kpodi was ultimately convicted of possession with intent to distribute twenty-eight grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(iii), and of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

The Government moved to introduce evidence pertaining to an incident that occurred on April 4, 2013. In *Kpodi I*, we described the incident as follows:

> On the evening of April 4, Kpodi's neighbors reported gun shots near Kpodi's house. . . . [C]rime-scene investigators recovered twenty-nine shell casings near Kpodi's residence, fourteen of which were from a .45 caliber handgun—the same caliber as the handgun subsequently seized in Kpodi's residence on May 9. On April 24, the police interviewed two witnesses who saw Kpodi fleeing to his residence and ducking behind vehicles while the shootings occurred.

824 F.3d at 124 (footnote omitted). The District Court excluded the April 4 shooting evidence from trial. It determined that the evidence did not establish whether Kpodi had played any active role in the shootings. As a result, the court concluded that the evidence's prejudicial effect substantially outweighed its probative value.

Kpodi's initial sentencing took place on June 3, 2014. The Presentence Report ("PSR") included a description of the April 4 shooting incident. Kpodi objected to the District Court's consideration of evidence related to the shooting for sentencing purposes. He argued it was no more relevant for sentencing than it had been during trial. The court concluded, however, that the evidence's inclusion in the PSR was permissible as a "description of the circumstances that led to the investigation and ultimately to the execution of the search warrant at Mr. Kpodi's home," which in turn led to his arrest and conviction. *Id.* at 125.

When the District Court discussed the 18 U.S.C. § 3553 sentencing factors, it addressed the April 4 shooting in the context of the other crimes evidence. It noted that, "[w]hile we don't know the precise reason for the gunfight or the defendant's precise role in the gunfight, what is clear from the defendant's involvement and participation in the gunfight combined with the loaded guns found in his possession during [an April 27, 2013] car-stop in the same month as the street gunfight and in his D.C. home where he stored his drugs is that he was clearly prepared to use a gun as part of his illegal drug business." *Id.* at 125–26. The trial judge stated further that, "[t]o me, this is a very important circumstance that the association of the defendant's drug conviction with guns . . . is a very important consideration in the Court's determination of which sentence recommendation is appropriate in this case." *Id.* at 126.

Based on the PSR, the District Court imposed a two-level enhancement for possession of a dangerous weapon in furtherance of Kpodi's drug trafficking. It ultimately sentenced him to concurrent terms of 151 months' imprisonment on the

drug conviction and 120 months on the firearm conviction, at the bottom of the guidelines range.

### B. The Court of Appeals Decision in *Kpodi I*

Kpodi timely appealed his sentence to this court, arguing that the District Court had abused its discretion by considering the April 4 shooting evidence when it sentenced him. *Id.* at 126. We agreed.

The court in *Kpodi I* found that the District Court had relied on the April 4 incident as evidence showing that Kpodi "was clearly prepared to use a gun as part of his illegal drug business." *Id.* at 127. "[I]n view of the vagueness of [that] evidence," the court determined that the District Court's "inference that Kpodi either fired a weapon, was holding a gun while fleeing or even participated in the April 4 shooting was clearly erroneous." *Id.* at 128. Reliance on that clearly erroneous inference in support of a conclusion that Kpodi had a propensity to use firearms in connection with his drug dealings, the court held, constituted an abuse of discretion. *Id.*

The decision in *Kpodi I* went on to explain that, although other evidence "may ultimately support the district court's conclusion that Kpodi had a propensity to use firearms in connection with drug dealings, the inference that the *April 4* evidence demonstrated that propensity was clearly erroneous." *Id.* It further held that, despite the April 4 incident being only "one of multiple incidents that led the court to conclude that Kpodi was likely to use guns in furtherance of his drug transactions," the District Court's erroneous consideration of that evidence was not harmless because the court had "called the April 4 incident 'chilling,' referenced it specifically in discussing the harm to 'innocent bystanders, including children,' and explained that it was a 'very important

circumstance' and 'very important consideration' in determining 'which sentence recommendation is appropriate.'" *Id.* at 130 (quoting Initial Sentencing Transcript, at 47–48).

In light of these considerations, we vacated Kpodi's sentence and remanded the case to the District Court for resentencing. *Id.*

## C.  Resentencing Following Remand

On remand, the Government proposed that the District Court impose the same sentence. *See* Gov't's Memo in Aid of Resentencing, *reprinted in* Appendix ("App.") 24, 28. The Government asserted that "the jury's conviction of the defendant of the possession of the weapon . . . , in conjunction with the circumstances of defendant's possession of weapons and narcotics in both Maryland and in [D.C.], allow the Court to make a finding for sentencing purposes that the weapon . . . was possessed in furtherance of his drug trafficking." *Id.* at 31.

At the resentencing hearing, Government counsel and the District Court judge engaged in the following colloquy:

> GOV'T COUNSEL:   . . .[I]t was not my impression, based on the last sentencing, that the Court inappropriately considered anything that it should not have considered – –
>
> THE COURT: The record was clearly not sufficiently clear.
>
> GOV'T COUNSEL: Perhaps not according to the Circuit. However, my point is: I believe the Court should do what it did the last time. I don't think anything happened incorrectly the last

time and that the same analysis therefore, in essence, applies this time, aside from any lack of clarity, if there was any on that one particular point.

Resentencing Transcript at 17–18. Government counsel also said: "My understanding of the D.C. Circuit's opinion is that the Court shouldn't speculate. Frankly, I don't think the Court speculated last time." *Id.* at 10.

Despite being egged on by Government counsel, the District Court finally made it clear that it was "not relying on any particular role this defendant may or may not have had in connection with this shooting incident . . . in calculating an appropriate sentence in this case." *Id.* at 12–13. The trial judge then said, "and I did not before." *Id.* The District Court went on to impose the same sentence that it had imposed at the initial sentencing. After considering the evidence before it, the trial judge concluded that Kpodi had a propensity to use firearms in connection with his drug dealing activity. Accordingly, it determined that a guidelines-compliant sentence of 151 months incarceration was appropriate. *Id.* at 49.

Kpodi now appeals his sentence for a second time. He argues that the District Court's suggestion that it had not previously considered the unreliable shooting evidence deprived him of the resentencing he was entitled to under this court's *Kpodi I* decision. According to Kpodi, this error violated this court's mandate in *Kpodi I* and the law of the case. He further claims that the error caused the District Court to impose an unduly harsh sentence and was therefore prejudicial. The Government defends the new sentence as valid.

## II.     ANALYSIS

### A.  Standard of Review

Once again, we review Kpodi's challenge to his sentence for abuse of discretion. *Kpodi I*, 824 F.3d at 126. We first "ensure that the district court committed no significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). At this step, we review the court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Brown*, 857 F.3d 403, 405 (D.C. Cir. 2017). A district court commits legal error and therefore abuses its discretion when it fails to abide by the law-of-the-case doctrine or the mandate rule. *See United States v. Singleton*, 759 F.2d 176, 180 (D.C. Cir. 1985). We thus review the District Court's application of both doctrines *de novo*. *See United States v. Alston*, 722 F.3d 603, 606 (4th Cir. 2013) (mandate rule); *Field v. Mans*, 157 F.3d 35, 40 (1st Cir. 1998) (law-of-the-case doctrine).

If we find that the District Court's sentencing decision was procedurally sound, we "then consider the substantive reasonableness of the sentence imposed . . . tak[ing] into account the totality of the circumstances." *Gall*, 552 U.S. at 51.

### B.  The Mandate Rule and the Law-of-the-Case Doctrine

The mandate rule embodies the simple principle that "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948). It is "a more powerful version of the law-of-the-case doctrine, which prevents courts from reconsidering issues that have already been decided in the same case." *Indep. Petrol. Ass'n of Am. v. Babbitt*, 235 F.3d 588, 597 (D.C. Cir. 2001) (internal quotation marks omitted).

The law-of-the-case doctrine "is a rule of practice whereby 'courts generally . . . refuse to reopen what has been decided.'" *Singleton*, 759 F.2d at 178 (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). "It is predicated on the premise that . . . it would be impossible for an appellate court to perform its duties satisfactorily and efficiently and expeditiously if a question, once considered and decided by it[,] were to be litigated anew in the same case upon any and every subsequent appeal." *Id.* (quoting *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1981)).

Kpodi asserts that the District Court's statement that it "did not [rely on the shooting incident] before" violated both this court's mandate in *Kpodi I* and the law of the case. In Kpodi's view, this statement by the District Court caused it to "fail[] to re-assess the § 3553 factors when it re-sentenced appellant." Appellant's Br. 7. In other words, Kpodi argues that because the District Court did not believe that it had erred in considering the April 4 shooting during his initial sentencing, the court erred in failing to "subtract that incident" from its calculus during resentencing. *Id.* at 11.

The Government, for its part, contends that the District Court merely "express[ed] its disagreement" with the Court of Appeals' finding that it had relied on the shootout, but did not improperly revisit that determination or fail to carry out the resentencing mandate that this court's opinion imposed. Gov't Br. 16–17.

Appellant is correct in arguing that, under the law-of-the-case doctrine and mandate rule, a district court commits legal error by failing to reconsider a sentence on the ground that it disagrees with the court of appeals' reading of its prior sentencing transcript. *See Singleton*, 759 F.2d at 180; *Briggs*, 334 U.S. at 306. In this case, however, the District Court clearly

followed this court's instruction to resentence the defendant without consideration of the improper inference from the shooting evidence. The District Court initially disagreed with *Kpodi I*'s finding that the court had considered the April 4, 2013 gunfight when it first sentenced Kpodi. However, the judge ultimately made it clear that the decision to resentence Kpodi to the same sentence was reached without any reliance on the April 4 shooting incident. Indeed, the court reiterated that point at least three times.

Furthermore, the District Court explained the events and evidence that it did rely on in support of its finding that Kpodi had a propensity to use dangerous weapons in connection with his drug crimes. Resentencing Transcript at 39–40 ("[T]he April 27 traffic stop, the October 30th search, combined with the other evidence in his record of arrest, where he was also found in possession of a gun, all does show that he has a propensity to use firearms."). That evidence did not include the April 4 event, and it was more than sufficient to support the court's conclusion. *Id.*

For example, the court described the several occasions on which Kpodi was arrested or charged with criminal activity and noted that "it seems like every time he had been arrested, even from 2010 through 2013 . . . , he always had a loaded gun on him." *Id.* at 39. The court also noted that,

> [T]he conclusion about the defendant's propensity to possess illegally loaded guns, including as part of his drug business, is supported by his drug and gun conviction in 1997, the possession of a loaded gun in his car twice when he was arrested in 2010 and April 2013, and his possession of drugs and a loaded gun in May 2013 without any need or any

reliance whatsoever on whatever his role was in the April 4, 2013 shootout in the residential neighborhood where he then lived, and without drawing any inference whatsoever about whatever his role might have been in that shootout.

*Id.* at 40.

In addition, the District Court explained:

The D.C. Circuit said, in its remand decision, quote: "The evidence from the April 27 traffic stop and October 30 search may ultimately support the district court's conclusion that Kpodi had a propensity to use firearms in connection with his drug dealings," period. And it does.

*Id.* at 39 (quoting *Kpodi I*, 824 F.3d at 128).

The District Court plainly accepted this court's conclusion that any consideration of the shooting incident or any inference about Kpodi's role therein was inappropriate and it heeded this court's mandate to resentence Kpodi without considering that evidence. The District Court engaged in a careful and thoughtful analysis of the remaining evidence and the sentencing factors, and it reached a reasonable conclusion. The sentence the court imposed was procedurally and substantively sound, and we will not disturb it.

## C. Inappropriate Statements By the Prosecutor

Kpodi's frustration with the proceedings below is understandable. The most concerning thing about the transcript of the resentencing hearing is Government counsel's suggestion to the District Court that it should go so far as to disregard the Court of Appeals' decision. *See* Resentencing Transcript at 17–18.

Parties are, of course, free to disagree with a court's findings. But as appellate counsel for the Government agreed, it is highly improper for the Government to urge disregard of the Court of Appeals' decision before the District Court on remand. *See* Oral Arg. Recording at 11:52–12:00, 12:36–12:50, 13:40–13:55. As the Supreme Court has explained, the United States Attorney "is in a peculiar and very definite sense the servant of the law . . . [and it] is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935). That duty extends to sentencing. *See, e.g.*, *United States v. Pavloyianis*, 996 F.2d 1467, 1475 (2d Cir. 1993) (ascribing "a higher standard of professional and ethical responsibility" to government attorneys); *Gray Panthers v. Schweiker*, 716 F.2d 23, 33 (D.C. Cir. 1983) ("There is, indeed, much to suggest that government counsel have a higher duty to uphold because their client is not only the agency they represent but also the public at large.").

Statements like those Government counsel made in this case have significant consequences for the public's perception of judicial proceedings. And activity that threatens the perception of fairness in those proceedings undermines faith in our system of justice. *See Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1666 (2015); *Caperton v. A.T. Massey Coal Co.,*

*Inc.*, 556 U.S. 868, 889 (2009); *Offutt v. United States*, 348 U.S. 11, 14 (1954) (Frankfurter, J.) ("[J]ustice must satisfy the appearance of justice."). Those consequences are heightened when a defendant's liberty is at stake. *Cf. Young v. United States*, 481 U.S. 787, 810 (1987) (opinion of Brennan, J.); *In re Winship*, 397 U.S. 358, 363–64 (1970). Consider Kpodi's perspective: He believed his initial sentence was invalid. He appealed it. He convinced this court he was right. But at his resentencing, Government counsel attempted to contradict the plain terms of our judgment in *Kpodi I*. A defendant who hears what the prosecutor had to say might justifiably wonder if he has truly had his day in court. However, as was her duty, the District Court judge ultimately ignored Government counsel's impermissible overtures and resentenced Kpodi properly under the law.

## III. CONCLUSION

For the reasons set forth above, we affirm the judgment of the District Court.